**The below described is SIGNED.**

**Dated: August 20, 2014**

_/s/ J T Marker_
**JOEL T. MARKER**
**U.S. Bankruptcy Judge**



IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| In re: <br><br> MICHAEL FREDERICK ANTHONY, <br><br> Debtor. | Bankruptcy Case No. 11-32787 <br><br> Chapter 7 |
| J&R INVESTMENT COMPANY, a Utah limited partnership, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL FREDERICK ANTHONY, <br><br> Defendant. | <br><br><br> Adversary Proceeding No. 12-2561 <br><br> Judge Joel T. Marker |

**MEMORANDUM DECISION**

Prosecuting a bankruptcy case without the assistance of competent counsel is a risky endeavor, and one that occurs with unfortunate frequency in the District of Utah. For some debtors with straightforward financial circumstances and nobody chasing them, errors and inconsistencies in their filings may require additional investigation and explanation but will not ultimately jeopardize their ability to complete a chapter 7 case and obtain a discharge of their prepetition debts. But for Michael Anthony, with a motivated creditor on his heels, his decision

to file a chapter 7 case without an attorney has led to years of additional conflict culminating in a two-day trial as to whether his December 2011 discharge should be revoked under § 727(d)(1) or (2) of the Bankruptcy Code.[1]  The Court conducted this trial on July 10 and 11, 2014 and took the matter under advisement.  After considering the evidence properly before the Court, assessing the credibility of the four witnesses, considering the arguments of counsel, and conducting an independent review of applicable law, the Court issues the following Memorandum Decision to explain why Mr. Anthony will retain his discharge.[2]

## I. FACTS

The Debtor, Michael Anthony, began renting commercial storage space for his Freedom Storage business from the Plaintiff, J&R Investment Company, when it was run by John and Rita Billinis.[3]  After their deaths in 2005, their children Alex, Barbara, and Katherine took over J&R as partners, while lengthy and disputed probate proceedings got underway.  J&R sued Anthony in July 2006 seeking unpaid rent and his eviction from the premises, but then Katherine married Anthony in January 2007.  The Billinis siblings reached a global settlement in the probate proceedings in May 2007 that resulted, among other things, in Katherine receiving full ownership of some of J&R's real properties in exchange for her interest in J&R, while J&R itself retained ownership of all claims against Anthony.[4]  With those properties, Katherine created E.Z.

---

[1] All statutory references are to title 11 of the United States Code unless otherwise indicated.
[2] This Memorandum Decision constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052.  Any of the findings of fact herein are also deemed to be conclusions of law, and any conclusions of law herein are also deemed to be findings of fact, and they shall be equally binding as both.
[3] Some of the background facts are taken from the Affidavit of Barbara Billinis Colessides filed on July 8, 2014 as docket #87.  Given Barbara's self-caused unavailability at trial and the limited purpose of her testimony, the Court permitted her testimony to be presented by affidavit.  As her affidavit does not affect the outcome of this adversary proceeding, the Court accepts the factual statements contained therein—including as to J&R's lack of knowledge of any alleged fraud until after Anthony's discharge was granted—and there is no need for Anthony to cross-examine her.
[4] Pltf. Exh. WW; Def. Exh. 1.

Storage, L.L.C. and One Unit Investments, L.L.C. in 2007,[5] and she hired Anthony to work as the property manager for both companies.

J&R obtained an order of partial summary judgment against Anthony in December 2007 for $169,743.24, but J&R did not get that order certified as final until August 2010.[6] Meanwhile, Katherine and Anthony got divorced in March 2008, with Katherine receiving full ownership of the E.Z. Storage and One Unit Investments businesses, all of her J&R-related real properties, and a house at 1666 West 2700 South in West Valley City—essentially everything except a 1997 Ford Explorer.[7] Even so, Katherine retained Anthony as the property manager for One Unit Investments until approximately May 2012, and Anthony is still the property manager for E.Z. Storage. J&R ultimately served writs of garnishment on E.Z. Storage and One Unit Investments in late August 2011,[8] and Anthony filed his chapter 7 bankruptcy case on August 31, 2011. The Chapter 7 Trustee collected $1,293 from tax refunds and the sale of household goods and a handgun back to Anthony, and her final report was filed on May 29, 2013.[9] The main case was closed on June 20, 2014.

J&R had no apparent basis for seeking nondischargeability of Anthony's debt under § 523, and J&R filed no such complaint before the December 5, 2011 due date despite receiving proper notice of the bankruptcy case and relevant deadlines. Anthony completed all of his bankruptcy requirements, and nobody filed a § 727 complaint, so the Court issued Anthony a general discharge of his debts on December 6, 2011. But Anthony left J&R an opening thanks to the content of his self-completed bankruptcy papers. J&R conducted (or attempted to conduct)

---

[5] Pltf. Exh. A, Tabs E and F.
[6] Pltf. Exh. A, Tab B. As of the bankruptcy petition date, J&R asserted a claim of $213,530.88 plus prepetition attorney's fees. *See* Pltf. Exh. VV.
[7] Def. Exh. 4.
[8] Pltf. Exh. Q. J&R also got a writ of execution issued by the state court in August 2011, but it was apparently not served before the bankruptcy petition date. *See* Pltf. Exh. S.
[9] Docket #40 in main case #11-32787.

3

substantial discovery in the main case before ultimately filing this adversary proceeding on December 4, 2012—two days shy of § 727(e)'s one-year deadline for seeking revocation of a debtor's discharge under § 727(d)(1). The kitchen-sink complaint and its attachments totaled 125 pages and alleged claims for relief under each of § 727(d)(1), (2), and (3).[10] Even then, Anthony continued to represent himself in the adversary proceeding until finally making the wise decision to hire counsel in late August 2013.

At trial, J&R alleged that Anthony made a number of errors and omissions that justify the revocation of his discharge. These include the following: (1) filing a false Payment Advices Certification;[11] (2) failing to list business income and expenses from Freedom Storage in the Schedules, Statement of Financial Affairs (SOFA), and Chapter 7 Statement of Current Monthly Income and Means-Test Calculation (Form 22A);[12] (3) falsely referencing himself as a salaried employee; (4) understating the correct amount of income from E.Z. Storage and One Unit Investments in the Schedules, SOFA, and Form 22A; (5) failing to disclose any interests in real property; (6) failing to disclose two additional lawsuits in SOFA Question #4a;[13] (7) failing to list attached, garnished, or seized property in SOFA Question #4b; (8) failing to list any gifts in SOFA Question #7; (9) failing to list the name of his accountant in SOFA Question #19; (10) understating his cash on hand in Schedule B; and (11) failing to turn over estate property to the Chapter 7 Trustee.[14] To support its case, J&R relied heavily on the testimony of Anthony,

---

[10] With J&R's consent at the April 14, 2014 final pretrial conference, the Court dismissed the § 727(d)(3) count because J&R had no basis to allege that Anthony committed any of the acts specified in § 727(a)(6).
[11] Pltf. Exh. OO.
[12] Pltf. Exhs. C-E.
[13] Pltf. Exhs. SS and TT.
[14] Uncontroverted Fact #38 in the Pretrial Order (docket #63) references a 2007 real property transaction, but there was no discussion of this issue at trial. On June 30, 2014, the Court denied J&R's belated request to conduct additional discovery regarding any insurance claims related to the prepetition wreck of Anthony's 1997 Ford Escort. This issue was also not discussed at trial.

4

Katherine, Katherine's accountant Victor Romero, and expert witness Craig McQuarrie as well as Anthony's own bankruptcy papers, Anthony's 2009-12 tax return transcripts, certain tax returns of Katherine and One Unit Investments, and miscellaneous other documents including receipts and handwritten notes.[15] Anthony relied heavily on J&R's exhibits and his own Exhibit 2 in addition to his testimony and his counsel's cross-examination of the other witnesses.

## II. DISCUSSION

### A.    Automatic Dismissal Under § 521(i)

At the start of the trial, Anthony made an oral motion for the Court to find that his main bankruptcy case had been automatically dismissed under § 521(i) retroactively effective as of the 46th day after the August 31, 2011 petition date. He argued that this result was mandated because of his admitted failure to file "copies of [two] payment advices or other evidence of payment" under § 521(a)(1)(B)(iv) as referenced in his Amended Payment Advices Certification filed in the main case on July 9, 2014 as docket #48.

Countless cases have addressed the meaning and effect of "automatic dismissal" under the awkward language of § 521(a)(1) and (i), and the Court will not belabor the point here. Suffice it to say that whatever discretion the Court retains to "order[] otherwise" under § 521(a)(1)(B), this is the quintessential case for exercising such discretion.[16] Anthony filed his

---

[15] At trial, J&R attempted to revisit an issue that was partially broached as early as the February 20, 2014 hearing on J&R's Motion for Relief Pursuant to Bankruptcy Rules 7016(f) and 7037(b)—namely, whether Anthony had anything to do with the failure and/or refusal of Katherine and Victor Romero to participate in discovery. At trial, there was no evidence presented to support this notion. But because of the actions of Katherine and Victor Romero during the discovery phase of this adversary proceeding, the Court gave J&R substantial latitude in questioning these witnesses at trial.

[16] *See, e.g.*, *Segarra-Miranda v. Acosta-Rivera (In re Acosta-Rivera)*, 557 F.3d 8, 14 (1st Cir. 2009) ("Where . . . there is no continuing need for the information or a waiver is needed to prevent automatic dismissal from furthering a debtor's abusive conduct, the court has discretion to take such an action" even after the 45th day has passed.); *Wirum v. Warren (In re Warren)*, 568 F.3d 1113 (9th Cir. 2009) (agreeing with *Acosta-Rivera*); *Simon v. Amir (In re Amir)*, 436 B.R. 1 (6th Cir. BAP 2010) (agreeing with *Acosta-Rivera* and *Warren*).

chapter 7 petition three years ago. The Chapter 7 Trustee liquidated assets, filed a request for claims, distributed funds to creditors, paid her administrative expenses, and submitted her final report. The main case has been closed. For its part, J&R performed years of substantial work in both the main case and this adversary proceeding. All of this occurred with Anthony's full knowledge. Anthony has also known about J&R's specific allegation of the false Payment Advices Certification for some time. And yet with all this as backdrop, Anthony still has the chutzpah to use his own admitted (even if honest) failure to file an accurate document with the Court as the basis for undoing years of activity after the trial has begun on whether his discharge should be revoked for failing to file accurate documents with the Court—and without any explanation as to what should happen, for just one example, to the funds distributed to creditors and the Chapter 7 Trustee.

The motion is denied.

**B.     § 727(d)(1)**

Section 727(d)(1) provides that the Court "shall revoke a discharge granted under subsection (a) of this section if such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." The fraud must be "fraud in fact" rather than implied fraud.[17] "[T]he critical element . . . is proving intent,"[18] and "[c]redibility is a critical aspect of every § 727[] case."[19] "If [J&R] establishes a *prima facie* case for [revoking Anthony's] discharge under § 727, the burden of going forward

---

[17] *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991).
[18] *Wilson & Muir B&T Co. v. Eifler (In re Eifler)*, Adv. No. 12-3052, 2013 WL 3300639, at *23 (Bankr. W.D. Ky. July 1, 2013) (analyzing § 727(a)(2)); *see also Lincoln Sav. Bank v. Freese (In re Freese)*, Adv. No. 09-9140, 2010 WL 2978527, at *2 (Bankr. N.D. Iowa July 27, 2010) (describing intent as a "critical factual question" under § 727(a)(4)(A)).
[19] *Murphy v. Vanschoiack (In re Vanschoiack)*, 356 B.R. 56, 65 (Bankr. D. Idaho 2006). Anthony was agitated at times on the stand, but the Court found his demeanor and testimony to be credible. The Court also found his lack of sophistication and confusion over tax, business, and overall financial issues to be sincere.

6

shifts to [Anthony]. The ultimate burden, however, always rests with [J&R] to prove grounds for [revocation] of [Anthony's] discharge."[20] And since "[r]evocation of discharge is an extraordinary remedy," the relevant provisions "must be construed strictly against [J&R] and liberally in favor of [Anthony]."[21]

J&R couches Anthony's alleged fraud solely in terms of § 727(a)(4)(A), which provides that the Court "shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account."[22]

> Thus, a debtor's discharge may be barred if he knowingly and fraudulently makes a false oath in or in connection with the case. A debtor's petition, schedules, statement of financial affairs, statements made at a 341 meeting, testimony given at a Federal Rule of Bankruptcy Procedure 2004 examination, and answers to interrogatories all constitute statements under oath for purposes of § 727(a)(4). The same holds true for deposition testimony and testimony at other hearings during the course of the bankruptcy case. The false oath also need not be an affirmative misstatement; knowing and fraudulent omissions will also suffice.
> It is the purpose of § 727(a)(4) to enforce a debtor's duty of disclosure and to ensure that the debtor provides reliable information to those who have an interest in the administration of the estate. The trustee and the creditors have the right to information that will allow them to evaluate the case and administer the estate's property. Thus, complete financial disclosure is a condition precedent to the privilege of discharge.
> Before the Court may deny a debtor's discharge under § 727(a)(4)(A), however, the plaintiff must demonstrate that the debtor (1) knowingly and fraudulently made a false oath and (2) that the false oath relates to a material fact. A debtor will not be denied discharge if a false statement is due to mere mistake or inadvertence. Moreover, an honest error or mere inaccuracy is not a proper basis for denial of discharge. However, reckless indifference to the truth . . . has consistently been treated as the functional equivalent of fraud for purposes of § 727(a)(4)(A).

---

[20] *Freelife Int'l, LLC v. Butler (In re Butler)*, 377 B.R. 895, 915 (Bankr. D. Utah 2006); *see also Saviano v. Tylee (In re Tylee)*, 512 B.R. 409, 415-16 (Bankr. E.D.N.Y. 2014) (discussing the shifting burden in an action under § 727(d)(1) and (a)(4)(A)); Fed. R. Bankr. P. 4005.
[21] *Davis v. Osborne (In re Osborne)*, 476 B.R. 284, 297 (Bankr. D. Kan. 2012).
[22] *See, e.g.*, *Lincoln Nat'l Life Ins. Co. v. Silver (In re Silver)*, 367 B.R. 795, 805-06 (Bankr. D.N.M. 2007) (analyzing the history of § 727(d)(1) and its connection to § 727(a)(2)-(5)).

Reckless disregard means not caring whether some representation is true or false.[23]

It is also true, as with § 727(a)(2), that no actual detriment to a creditor needs to be shown. A statement or omission is material under § 727(a)(4)(A) if it bears a relationship to the debtors' business transactions, or if it concerns the discovery of assets, business dealings, or the existence or disposition of the debtors' property. It is the debtors' duty to disclose everything, not to make decisions about what they deem important enough for parties in interest to know.

Finally, factors considered under § 727(a)(4)(A) [when examining the totality of the circumstances] may include the number of omissions; the debtor's profession as it relates to the omissions; how the omission is discovered and how quickly the debtor rectifies the omission; any pattern to the omission; failure to correct all of the inconsistencies and omissions upon making allegedly curative amendments; whether the debtor had access to an attorney; whether the debtor was attempting to place his personal funds beyond the reach of creditors; the seriousness with which the debtor regarded his duties under the Code; and whether the false statements were made in an attempt to advance the debtor's own interests. Even a debtor's purported inexperience with financial affairs does not negate the fact that he made false oaths by knowingly swearing to false information."[24]

With all this as prologue, the heart of this matter really involves Anthony's income from his own business operations and his work as property manager for E.Z. Storage and One Unit Investments. One point of agreement between the parties is that Anthony failed to list the income that he received from Freedom Storage for 2009, 2010, and 2011 anywhere in his SOFA, Schedules, or Form 22A. Instead, he only listed income of $1,500/month from E.Z. Storage and $738/month from One Unit Investments. But he did disclose Freedom Storage in several locations—namely in Questions #1 and 18a in the SOFA, and in Question #14 in Schedule B—and consistently listed it as a defunct *dba* with no income and no value. In addition to this

---

[23] *Cf. Schechter v. McAniff (In re McAniff)*, Adv. Nos. 03-A-4407 and 03-A-4408, 2004 WL 1146699, at *5 (Bankr. N.D. Ill. May 21, 2004) (discussing "ignorance or ineptitude" and stating that "if the debtor was inept, he may or may not have been sufficiently reckless as to imply fraud"); *Buckeye Ret. Co., LLC v. Heil (In re Heil)*, 289 B.R. 897, 903 (Bankr. E.D. Tenn. 2003) ("A discharge may not be revoked based upon a debtor's ignorance of the law or carelessness of the parties.").

[24] *Butler*, 377 B.R. at 922-24 (Bankr. D. Utah 2006) (internal quotes and citations omitted).

disclosure, the Court found Anthony to be credible when he testified that he was confused and focused on E.Z. Storage and One Unit Investments when he was completing his bankruptcy papers, because those were his income sources that still existed at the time.

J&R introduced transcripts of Anthony's 2009, 2010, 2011, and 2012 tax returns into evidence,[25] but then J&R spent all of its time focused on the 2009, 2010, and 2011 transcripts even though Anthony had already admitted that he failed to list Freedom Storage income for those years. J&R offered no evidence to contradict Anthony's assertion that Freedom Storage genuinely ceased operations in 2011 before he filed for bankruptcy. And only once, in closing arguments, did J&R address the 2012 transcript, claiming that it was evidence of Freedom Storage's undisclosed ongoing operations both pre- and postpetition. But the 2012 transcript says nothing of the sort, and the evidence on this record just as easily or better supports the finding that Anthony started some kind of business for additional income after Katherine terminated him as One Unit Investments' property manager around May 2012.[26]

As for his income from E.Z. Storage and One Unit Investments, the state of this record is inconclusive at absolute best. To be sure, the documents in evidence are riddled with inconsistencies, but anything beyond that is unclear. J&R tried to paint a picture of Anthony as a profit-sharing partner with Katherine in E.Z. Storage and One Unit Investments rather than a salaried employee, but the evidence does not bear that out.

Katherine's credible testimony combined with copies of checks received by Anthony support the view that Katherine paid him as either a salaried employee or independent contractor, essentially as Katherine saw fit based on net profits for the month and without Katherine issuing

---

[25] Pltf. Exhs. M-P.
[26] *See, e.g.*, *In re Castle Arch Real Estate Inv. Co., LLC*, No. 11-35082, 2013 WL 1603319, at *8 (Bankr. D. Utah Apr. 15, 2013) ("Even equipoise of the evidence is not enough for the party with the burden of proof to prevail.").

him either a Form W-2 or 1099.[27] Victor Romero recalled relatively little about his preparation of tax returns for Katherine and One Unit Investments. Neither Katherine nor Victor Romero could make heads or tails of their own handwritten notes on certain tax return worksheets.[28] The total rental income figure on the 2010 worksheet does not match the rents received in Katherine's 2010 individual income tax return.[29] Katherine testified to the gross inaccuracy of her own 2010 tax return, because the parking lot identified in the return was vacant and generated no rents.[30] The testimony and documentary evidence were unclear as to whether Katherine, Anthony, or neither failed to report management fee income that they received. And without his accountant to interpret his own 2009-12 tax return transcripts, Anthony was at an earnest and utter loss to explain both their form and content. Both Anthony and Katherine credibly testified to their general practice of providing information to their accountants and then basically washing their hands of their tax returns.

All told, the inconsistent numbers only create some smoke but point to no fire. Even J&R's expert, Craig McQuarrie, could say nothing more than that discrepancies existed. But for all of these inconsistencies, J&R did not make a *prima facie* showing that Anthony listed an incorrect nature or understated amount of his income from E.Z. Storage and One Unit Investments.[31] Or if it did, Anthony credibly rebutted that *prima facie* showing with his own testimony regarding his confusion, lack of knowledge, and lack of intent. The Court is obviously wary of self-serving denials and feigned ignorance as a means of negating a finding of intent, but

---

[27] *See, e.g.*, Pltf. Exhs. W-Y; Def. Exh. 2.
[28] *See* Pltf. Exhs. H and L (which are color versions of Pltf. Exhs. KK, Bates #s TXPLS 59 and 27, respectively).
[29] *See* Pltf. Exhs. H and KK, Bates #s TXPLS 52-53.
[30] *See* Pltf. Exh. KK, Bates #TXPLS 52, Column C.
[31] When comparing just the net income from Anthony's 2009-12 tax return transcripts with the income listed in his Schedules, SOFA, and Form 22A, the bankruptcy papers actually allege more income than the transcripts.

the Court is wholly convinced that neither Anthony, Katherine, nor Victor Romero are feigning anything with regard to their tax returns, tax return transcripts, and related documents.

As discussed above, Anthony admitted to receiving two "payment advices or other evidence of payment" in the 60 days before the petition date that he failed to disclose in his Payment Advices Certification.[32] One was a $2,000 check from E.Z. Storage dated July 8, 2011, and the other was a $2,000 check from One Unit Investments dated August 16, 2011. Anthony credibly explained his misunderstanding and confusion based on footnote 1 of the Payment Advices Certification, which provides that a "'Payment Advice' includes, but is not limited to, pay stubs attached to your paycheck, employer's statement of hours and earnings, deposit notifications, etc." Since he received only paper checks under Katherine's informal payment regime, it did not occur to him that they would qualify as payment advices. Both Anthony and Katherine also credibly testified that the August 16 check, which contained a "bonus/loan" notation, was a gift from Katherine to Anthony's daughter for her wedding that was merely funneled through Anthony. As such, since the money was really from Katherine, Anthony did not think to list it in SOFA Question #7. J&R also assumed but presented no evidence in the form of testimony, bank statements, or otherwise that Anthony had any of those funds in his possession or control as of the petition date, and there is no basis for a finding that Anthony understated the amount of cash that he had on hand in Schedule B.

The rest of J&R's allegations can be disposed of in relatively short order. J&R offered no evidence that Anthony had any undisclosed interests in real property except for Katherine's handwritten notes on two documents.[33] But the parties' Decree of Divorce indicates that

---

[32] Pltf. Exh. OO.
[33] Pltf. Exhs. J and LL, Bates #SHIELD 63.

Katherine was awarded the West Valley City house,[34] and Katherine's testimony was credible and clear that Anthony had no interest in the house as of the petition date. As for the two undisclosed lawsuits,[35] Anthony credibly testified that he didn't list them in SOFA Question #4a in addition to the J&R Investment lawsuit because they were "so old" at the time. Judgment was entered in the Cach LLC debt collection suit in January 2008; although the case was still technically open as of the petition date, there had been no substantive activity since a supplemental hearing in August 2009. As for the attempted theft of services suit, it was resolved by a plea in abeyance in March 2010, although it was not formally dismissed until May 2011. The extent of any attached, garnished, or seized property under SOFA Question #4b is unclear, and Anthony's testimony demonstrated earnest confusion about this point as well. He did list the J&R lawsuit in SOFA Question #4a, and J&R was surely aware of its own writs of garnishment and execution. Finally, Anthony indicated in both his trial brief and his proposed findings and conclusions that his tax preparer, Mr. Oliphant, had died.[36] There was no evidence presented regarding either the occurrence or timing of Mr. Oliphant's death, but J&R did not challenge the point and did not call Mr. Oliphant as a witness or otherwise involve him in this proceeding. J&R also failed to indicate how the failure to list Mr. Oliphant's name would have materially assisted it or how that failure justifies the revocation of Anthony's discharge.

In sum, the Court finds that any true errors in Anthony's bankruptcy papers were the result of his genuine ignorance, ineptitude, and confusion rather than any knowing fraud or even recklessness. So whether viewed as J&R failing to make a *prima facie* case on any particular allegation or Anthony's successful rebuttal of a properly made *prima facie* case, J&R has not met

---

[34] Def. Exh. 4.
[35] Pltf. Exhs. SS and TT.
[36] Docket #s 64 and 70, respectively.

its burden to demonstrate the requisite fraud by a preponderance of the evidence. Accordingly, Anthony's discharge will not be revoked under § 727(d)(1).

**C.     § 727(d)(2)**

Section 727(d)(2) provides that the Court "shall revoke a discharge granted under subsection (a) of this section if the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee." Although there is some question in the case law, "[a] careful reading of this section reveals that it applies only to property acquired by a debtor after his petition has been filed."[37] J&R offered no evidence that Anthony acquired, or became entitled to acquire, any estate property after the bankruptcy case was commenced. But even if § 727(d)(2) did apply to both pre- and postpetition property that a debtor failed to report or turn over, and for the reasons already discussed above, J&R has not shown that Anthony had any relevant property in the form of business income, bank account funds, or otherwise. J&R also spent an inordinate amount of time trying to demonstrate that Anthony had a modest amount of outstanding wages due as of the petition date, but the evidence does not support that assertion either. Accordingly, Anthony's discharge will not be revoked under § 727(d)(2).

**D.     Attorney's Fees and Costs**

In his trial brief, Anthony requested that J&R be required to pay all of his attorney's fees and costs "for the harassment and having to defend against this frivolous action," and he reiterated the request at the end of closing arguments. But Anthony fails to reference any statute, rule, or other basis for such an award. And although the allegations may have morphed slightly

---

[37] *Citicorp Real Estate, Inc. v. DaMaia (In re DaMaia)*, 217 F.3d 838, at *2 (4th Cir. 2000) (table).

over time and J&R did not ultimately prevail, the complaint was far from frivolous in the main, and Anthony himself started this train down the wrong track.[38]

The request is denied, and each party shall bear its own attorney's fees and costs.

### III. CONCLUSION

It is a well known adage in the legal community that a person who represents himself has a fool for a client. Such is unfortunately the case here. Michael Anthony tried to navigate the complex bankruptcy process by himself, and in so doing, he made several errors in Court-filed documents that he completed and executed under penalty of perjury. The Court takes such issues very seriously; complete, accurate, and honest disclosure is the necessary and appropriate price of the fresh start promised by the Bankruptcy Code. But whatever sins Anthony committed in his sworn bankruptcy papers, he has paid for them and then some in the form of years of litigation and substantially greater attorney's fees and costs than he likely would have incurred if he had hired counsel in the first place. For the reasons stated above, the Court cannot find on this record by a preponderance of the evidence that Anthony's discharge should be revoked under § 727(d)(1) or (2). Accordingly, the chapter 7 discharge issued on December 6, 2011 will remain intact, and J&R's complaint will be dismissed with prejudice. A separate judgment will be issued in accordance with this Memorandum Decision.

--------------------------------------------END OF DOCUMENT--------------------------------------------

---

[38] *Cf. State Bank of India v. Kaliana (In re Kaliana)*, 207 B.R. 597 (Bankr. N.D. Ill. 1997) (denying award of attorney's fees and costs under Rule 9011 in § 727(d) action).

**\_\_\_\_\_ooo0ooo\_\_\_\_\_**
**SERVICE LIST**

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below.

Steven W. Call
Elaine A. Monson
Ray Quinney & Nebeker
36 South State Street, 14th Floor
Salt Lake City, UT  84111
    *Counsel for Plaintiff*

Jay L. Kessler
Kessler Law Office, LLC
9087 West 2700 South, Suite 9
Magna, UT  84044
    *Counsel for Defendant*